IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREW M. MILLER,<br>an individual,<br><br>           Plaintiff,<br><br>vs.<br><br>KELLOGG USA, INC., a Michigan<br>corporation,<br><br>           Defendant. | 8:04CV500<br><br>MEMORANDUM AND ORDER |

This matter is before the court on a motion for summary judgment filed by defendant Kellogg USA, Inc. ("Kellogg") (Filing No. 54). Plaintiff Andrew M. Miller ("Miller") has responded. The court, having considered the motion, the response, the reply, and the record and relevant law, now determines that the defendant's motion should be granted.

**Undisputed Facts**

Miller worked for Kellogg, at its Omaha facility, in the maintenance department from 1965 through 2002. *See* Filing No. 55, Ex. A, hereafter "Miller Dep." at 20: 12-21; 96: 16-21. In addition to its regular employees, Kellogg also employs various outside contractors to perform some of the maintenance functions. *See* Filing No. 55, Ex. B, hereafter "Ellis Dep." at 6:5- 12:25. Marv Ellis ("Ellis") of Marv Ellis Contractors has performed construction management services for Kellogg as a contractor since 1983. *Id.* Ellis, however, has no authority over Kellogg employees, including Miller. *Id.* at 6:5- 12:25; Filing No. 55, Ex. C, hereafter "McCaffrey Dep." at 18:1- 19:25; 22:5-7.

Kellogg's policies and rules are outlined in the "Kellogg is People" employee handbook. *See* Miller Dep. at 48:19- 49:16; Filing No. 55, Ex. N-1. Those policies and rules prohibit sexual harassment. *Id.* Employees who feel they are being sexually

harassed are encouraged to contact Human Resources, a Business Unit Leader, Department Manager, or any Corporate Executive Officer of the Company. *Id.* The employee handbook also identifies a set of prohibitions which includes the rule against "deliberate sleeping or concealment while on duty." Miller Dep. at 31:16-23; Ex. N-1. at 19-22. The employee handbook warns that a single violation of this rule will likely result in discharge from employment. *Id.* The handbook states:

> Some problems are so serious that the first violation would probably call for discharge. The employee would be suspended, their identification badge swiped out, and notified later when the hearing would be held. Such problems include but are not limited to: . . .
>
> 3. Deliberate sleeping or concealment while on duty.

*Id.* Falling asleep without concealment, however, usually results in suspension for the first offense. Miller Dep. at 87:1-16; 201:3-6; Filing No. 55, Ex. H, hereafter "Muth Dep." at 67:23- 70:11.

In April 2001, Ellis informed Kellogg that Miller had his shirt off and pants rolled up while working on the facility's roof, which is a workplace violation. *See* Miller Dep. at 37:13-40:13; Ellis Dep. at 79:1-80: 6. As a result of this incident, Kellogg reprimanded Miller. *Id.* Afterwards, Ellis complained to his boss, the Technical Program Manager, Shawn McCaffrey ("McCaffrey"), that Miller gave him "the finger" and told him: "You mother fucker. I'll get you out of here. You better watch your back." *See* Ellis Dep. 80:9- 81:17; 95:1-96:24; McCaffrey Dep. at 101:2-13; 104:11-25.

In May 2002, new plant manager Virgil Thomas became concerned that internal plant rules were being disregarded and, as a result, productivity was suffering. McCaffrey Dep. 99:6-25; Filing No. 55, Ex. G, hereafter "Dailey Dep." at 95:3- 97:5; Muth Dep. 72:23-

73:18. Under his direction, union officials and shift managers were advised of a new initiative referred to as the "Back to Basics" program. *Id.* Under this program, Kellogg management would mandate a more strict and consistent enforcement of the rule against deliberate sleeping and sleeping in a concealed manner starting July 2002. *Id.*

On September 30, 2002, Miller and Christopher Haynes ("Haynes"), a co-worker, reported to Jerry Dailey ("Dailey"), Kellogg's Maintenance Manager, that they had been working on a certain hydrant under a wooden deck at the Kellogg plant. *See* Filing No. 55, Ex. D, hereafter "Haynes Dep." at 10: 11-15; 18: 1-19. They indicated that, while Miller was on his hands and knees with his head below the deck, Ellis came from behind Miller, grabbed his hips, and simulated having sex with him. *Id.* at 25:23-27; 17; Miller Dep. at 42:20-44:7. Miller stated that he told Ellis "[g]et your hands off me; I don't play these games." See Haynes Dep. at 24:24-25:7; Miller Dep. at 42:20-43: 11.

Initially, Miller and Haynes reported the incident to Union Steward Greg Quinn ("Quinn") and later to Dailey. Haynes Dep. at 41: 10-13; Miller Dep. at 56:22; 57:1. They also reported it to McCaffrey. Haynes Dep. at 48:4-23; McCaffrey's Dep. at 7:1-22. Meanwhile, Dailey reported the incident to Bill Muth ("Muth"), a human resources representative, who also met with Miller and Haynes. *See* Dailey Dep. at 37:12-15. McCaffrey then interviewed Ellis and, later, McCaffrey together with Muth also interviewed Ellis. McCaffrey's Dep. at 45:14- 46:8; Muth Dep. at 9:2-25.

Kellogg conducted a full investigation of the incident, however, it determined that not enough evidence existed to conclude that Ellis approached Miller from behind and simulated a sexual act. McCaffrey Dep. at 62:9- 63:16, Dailey Dep. at 40:1- 42:19; Muth Dep. at 35:25- 36;18; 59;15- 60:3. As a result, Kellogg deemed its investigation

3

inconclusive. *Id.* However, Kellogg counseled Ellis regarding its policy against harassment and warned that if additional evidence came to light, the investigation would be reopened. *See* McCaffrey Dep. at 60:22- 62:18; 102:15- 103:13; Dailey Dep. at 48:2- 49:1; Muth Dep. at 78:1-8. Kellogg also warned the other contractors that harassment would not be tolerated by Kellogg. *Id.*

Graffiti is common at the Kellogg's facility and Kellogg frequently has "graffiti runs" to eradicate graffiti from stalls and elevator doors. Haynes Dep. at 6:1-15; Miller Dep. at 130:19-24. However, after the alleged incident, graffiti began to appear throughout the plant depicting Ellis having sex with Miller. Filing No. 64, Ex. H. hereafter "Quinn Dep." at 34:12-20; 36;5- 37:2. The graffiti showed Ellis sexually dominating Miller. *Id.* at 46:5-20; Miller Dep. at 113:1- 120:24; Filing No. 55, Ex. N-8 and 14. Miller claims his co-workers often referred to him as "Marv's bitch," which a co-worker once wrote on Miller's bicycle. Miller Dep. at 128:22- 129:1; Haynes Dep. at 77:10-14. Miller's co-workers also left him a note stating: "Marv will be back," as well as a note on his tools which read: "Ellis Anal Lubemobile Have Grease Will Travel." Miller Dep. at 121:6-25; 122:1- 123:5; Filing No. 55 Ex. N-11 and 12. Miller, however, never complained to management about the graffiti and name calling until the time of his termination hearing. Miller's Dep. at 109: 8-16; 112:1- 130:24; 133;17-25; 135:1- 136:11; 136:5- 137;19.

After the incident and the appearance of the graffiti, Miller states that he spent his lunch hour resting in an air handler unit just above the lunch room to escape the graffiti and his co-workers' comments. Miller Dep. at 85:21-25; 96:22- 97:8; 135:19- 136:21; Muth Dep. at 26:22- 32:10: 52;2-24; 78;9- 79:1. On November 14, 2002, a supervisor found Miller sleeping on a chair, supported by two cushions, six feet inside that air handler unit.

4

Miller Dep. at 84:9-15; McCaffrey Dep. at 70:3- 72:2; Dailey Dep. at 62:9- 63:20; Muth Dep. at 80:17- 83:25.  As a result, Kellogg suspended Miller from his employment and eventually terminated him on November 22, 2002.  *Id.*

On January 29, 2003, Kellogg offered Miller the opportunity to return to work under a "Last Chance Agreement."  *See* Miller Dep. at 93:8-19; 96:8.  Miller signed the agreement and returned to work.  *Id.*  In the "Last Chance Agreement," Miller acknowledged that his rule violation provided good cause for termination and agreed that he would not be compensated for the time he did not work.  Miller Dep. at 93:8- 96:8; Muth Dep. at 45:10-13; Filing No. 55, Ex. N-6.  The agreement specifically states:

> 3. Mr. Miller and the Union agree to waive any and all rights to challenge or protest a discharge for violation of [sleeping in a concealed manner] . . . Mr. Miller further waives any right and agrees not to seek damages in any other legal or administrative forum related to a termination under this Agreement.

*See* Filing No. 55, Ex. N-6.

On April 22, 2003, Miller sought professional psychiatric help and expressed that he had difficulty dealing with Ellis' attack and the lack of support he received from Kellogg.  *See* Filing No. 64, Ex. I, hereafter "Sedlacek Dep." at 38:22- 39:5.  Miller received medication for anxiety, which included Lorazepam and Paxil.  *Id.* at 44:19- 45:23.  In March 2005, however, a supervisor again found Miller sleeping and terminated him.  *See* Dailey Dep. at 92:5- 93:25.

Kellogg has terminated other employees for sleeping in a concealed manner.  McCaffrey Dep. at 75:16; Haynes Dep. at 63:1- 68:25; 80:18-25; Muth Dep. at 72:12- 76:1.  For example, Kellogg terminated Employee #405544 and then offered him a chance to return to work under a Last Chance Agreement.  *Id.*  Kellogg also terminated Employee

5

#410262 and Employee #405825. *Id.* Kellogg, however, did not offer these two employees a Last Chance agreement and they no longer work for Kellogg. *Id.*

Miller has filed this lawsuit claiming a hostile work environment based on sex and retaliatory discharge. Kellogg has filed a motion for summary judgment contending it is entitled to judgment as a matter of law. Kellogg asserts that it did not violate Miller's rights in any way, that there are no genuine issues of material fact with respect to either of Miller's claims, and that its motion should be granted. The court now turns to the examination of Miller's claims.

**Summary Judgment Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. *Id.* Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *Id.* To successfully oppose the motion for summary judgment, the non-movant cannot rest on the pleadings alone, but must

designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue.  *Id.*

The Eighth Circuit has cautioned that summary judgment should rarely be granted in employment discrimination cases. *Keathley v. Ameritech Corp.,* 187 F.3d 915, 919 (8th Cir. 1999).  The Eighth Circuit, however, has explained that, notwithstanding this consideration, summary judgment "is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." *Whitley v. Peer Review Sys., Inc.,* 221 F.3d 1053, 1055 (8th Cir. 2000).

## Discussion

### *Hostile Work Environment*

In an employment discrimination case, the plaintiff must initially present a prima facie case to survive a motion for summary judgment. *Lidge-Myrtil v. Deere & Co.,* 49 F.3d 1308, 1310-11 (8th Cir. 1995) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973)).  The employer must then rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  If the employer does this, the burden of production shifts back to the plaintiff to demonstrate that the employer's non-discriminatory reason is pretextual.  *Id.*

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(1).  "Discrimination based on sex which creates a hostile or abusive working environment violates Title VII. *McCown v. St. John's Health System, Inc.,* 349 F.3d 540, 542 (8th Cir. 2003). To state a prima facie case for a claim of sexual discrimination based on a hostile work environment, an employee must show: (1) he

7

belongs to a protected group; (2) he was subject to unwelcome sexual harassment: (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take proper remedial action. *Id; Pedroza v. Cintas Corp. No. 2,* 397 F.3d 1063, 1068 (8th Cir. 2005).

Here, Kellogg does not dispute whether Miller meets the first two requirements of his prima facie case. Kellogg, however, disputes whether Miller meets his third requirement, i.e., that the alleged harassment was based on sex. "The based on sex requirement forces a plaintiff to prove that [he] was the target of harassment because of [his] sex and that the offensive behavior was not merely non-actionable, vulgar behavior." *Pedroza,* 397 F.3d at 1068. "This distinction exists because 'Title VII does not prohibit all verbal or physical harassment in the workplace' and is not 'a general civility code for the American workplace.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998)). "Consequently, to succeed on a hostile work environment claim under Title VII, a plaintiff must show that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex." *Id.* (quotations omitted).

There are three recognized, though non-exhaustive, "routes by which a same-sex plaintiff can show that the conduct was based on sex." *McCown,* 349 F.3d at 543; *Pedroza,* 397 F.3d at 1068. A plaintiff can show that (1) the conduct was motivated by sexual desire; (2) the harasser was motivated by a general hostility to the presence of the same gender in the workplace; or (3) the harasser treated males and females in a mixed-sex workplace different through direct comparative evidence. *Id.*

In this case, there is no support for Miller's claims under the second or third routes. With respect to the second route, Miller does not argue, and the evidence does not support, that the harasser was generally hostile to men in the workplace. With respect to the third route, Miller offers no evidence regarding the comparative treatment of women at Kellogg. Therefore, only the first route, whether the conduct was motivated by sexual desire, is at issue.[1]

However, after a careful review of the evidence in a light most favorable to Miller, the court determines that Miller has not raised a genuine issue of material fact showing that Ellis' alleged conduct or the graffiti, whose author is unknown, was motivated by a sexual desire. First, with respect to the alleged incident with Ellis, Miller testified that he never had any physical encounter with Ellis prior to the incident and he described it as "definitely horseplay." Miller Dep. at 46:14-20; 51:21-24; 150:8-19; Haynes Dep. at 27:5- 28:3; 115:2-10. Even Haynes, the co-worker who allegedly witnessed the incident, thought "[Ellis] was joking around." *Id.*

Second, with respect to the graffiti, there is no evidence that it was motivated by sexual attraction. Nothing in the record indicates that Ellis is the author of the graffiti. In fact, Miller indicated that he never spoke to Ellis after the incident and that he had no further incidents with him after September 30, 2002. Miller Dep. at 46:14-20; 220:1-12.

Furthermore, the Eighth Circuit has rejected claims of same-sex harassment based on sex premised upon facts more egregious than the conduct at issue here. For example, in *Pedroza, supra,* the defendant's conduct included: grabbing the plaintiff's face and

---

[1] Miller indicated that he has never seen Ellis undertake such conduct with anybody else and has never heard Ellis say anything he considered offensive. Miller Dep. at 46:14-20; 51:21-24.

9

attempting to kiss her on the mouth and cheek, attempting to hold the plaintiff's hand, pointing to her own buttocks and telling the plaintiff to "kiss it," saying to the plaintiff "kiss my ass," blowing kisses at the plaintiff, and saying that she wanted the plaintiff. *Pedroza,* 397 F.3d at 1069-71. Despite the defendant's conduct, the Eighth Circuit held that the plaintiff had not established that her claim of same-sex harassment was based on sex. *Id*. In making this determination, the court noted that the harasser and the plaintiff had an antagonistic relationship that preceded the alleged harassing conduct. *Id.* The court concluded that the harassment suffered by the plaintiff was more analogous to those cases in which the harassment "was tinged with offensive sexual connotations but not suggestive of motivation by sexual desire" and thus the harassment was not based on sex under Title VII. *Id.*

As in *Pedroza,* the plaintiff here cannot show that sexual desire was motivating Ellis. Ellis' alleged behavior in positioning himself behind Miller and simulating a sexual act, and the graffiti and notes, whose author or authors are unknown, represent boorish behavior that was tinged with offensive sexual connotations, which is not sufficient to create a jury question under the based sex requirement. *Pedroza,* 397 F.3d at 1069-70; *McCown,* 349 F.3d at 543.

In an effort to meet the third requirement of his prima facie case, Miller argues, in his brief, that the court should deny the defendant's motion because the harassment he suffered was based on the harasser's view that he failed to conform to gender stereotypes. Miller asserts that the alleged incident and the graffiti indicate that the harasser and co-workers had a vision or belief that Miller did not conform to the stereotype of his gender or that he is less than a man. The court notes, and Miller cites, some circuits that have

recognized claims of same-sex harassment based on the plaintiff's failure to conform to gender stereotypes are cognizable under Title VII. *See Nichols v. Azteca Restaurant, Inc.,* 256 F.3d 864 (9th Cir. 2001); *Bibby v. Phila. Coca Cola Bottling Co.,* 260 F.3d 257 (3rd Cir. 2001); *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 261 n. 4 (1st Cir. 1999).[2]

However, even if the court were to consider these decisions as persuasive and determine that Miller's harassment was based on sex, Miller's claim still fails as a matter of law because he has failed to demonstrate that the alleged harassment was so severe or pervasive as to alter a term, condition, or privilege of his employment, thus, failing to prove the fourth element of his prima facie hostile environment claim. To clear the high threshold of actionable harm, Miller, under this element, has to show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (internal quotations omitted).

The Supreme Court has stated that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Oncale,* 523 U.S. at 81. "Thus, the fourth part of a hostile environment claim includes both [an]

---

[2] It is unclear whether the Eighth Circuit recognizes this type of claim. Miller cites *Schmedding v. Tneme Company, Inc.,* 187 F.3d 862 (8th Cir. 1999), to support his proposition that the Eighth Circuit recognizes this claim. In *Schmedding,* the plaintiff alleged that he was patted on the buttocks, asked to perform sexual acts, given derogatory notes referring to his anatomy, called names such as "homo" and "jerk off," and was subjected to the exhibition of sexually inappropriate behavior by others including unbuttoning of clothing, scratching of crotches and buttocks. *Id.* at 865. The court held that although some of these acts were indicative of harassment based upon sexual orientation or perceived sexual orientation, they were sufficient to support a Title VII claim. However, in *Klein v. McGowan,* 198 F.3d 705 (8th Cir. 1999), in a decision published a few months after *Schmedding,* the Eighth Circuit states the contrary. In *Klein,* the plaintiff alleged that he was harassed because he was perceived as being or behaving like a homosexual. The court, however, held that harassment based on the perception that plaintiff was homosexual was not actionable under Title VII. *Id.* at 890.

objective and subjective component: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." See *Duncan v. General Motors Corp.,* 300 F.3d 928, 934 (8th Cir. 2002) (citations and quotations omitted). In determining whether or not the alleged harassment is severe and pervasive requires examining the totality of circumstances surrounding the discriminatory conduct. *Id.* Factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* However, courts are reminded that Title VII is "not designed to purge the workplace vulgarity." *Id.*

With respect to the subjective component of Miller's hostile work environment claim, the court determines that Miller fails to satisfy this component. First, with regards to the alleged incident with Ellis, the record indicates that Miller described the incident, at least on one occasion, as "definitely horseplay." *See* Miller Dep. at 46:14-20; 51:21-24; 150:8-19; Haynes Dep. at 27:5- 28:3; 115:2-10. Second, with regards to the graffiti and notes, Miller did not report them to Kellogg's management until Kellogg terminated him from employment. Miller's Dep. at 109;8-16; 112:1- 130:24; 133;17-25; 135:1- 137:19. The record indicates that Miller sought medical treatment. However, the record indicates that Miller sought this medical treatment in December 2002 – after his employment had been terminated. *See* Filing No. 55, Ex. N-O, December 31, 2002, Record Entry of Dr. Davidian. Furthermore, the record does not indicate that Miller sought this treatment solely because he perceived his work environment as abusive or hostile. *Id.* In fact, Dr. Davidian, who examined Miller, stated: "[patient] had a minor altercation with another employee at his work. The other individual was involved with some horseplay." *Id.* In April 2003, Miller also

12

sought psychiatric treatment. Miller Dep. at 83:10- 84:7; 99:1-14; Sedlacek Dep. at 38:22-39:5. However, the record indicates that Miller sought this type of treatment because "there were several things going bad at that time" for him besides the fact that his job had been terminated. These "things" included the death of his uncle as well as the death of several friends. *Id.*

With respect to the objective component of Miller's claim, the court determines that the facts in this case are below the baseline of actionable conduct that the Eighth Circuit has found to create a hostile environment. For example, in *Duncan, supra*, a supervisor's behavior included: requesting a sexual relationship from the plaintiff; touching her hand on several occasions; asking plaintiff to draw a picture of his planter that depicted a hole in the front of a man's pants from which protruded a cactus; displaying a pacifier shaped like a penis; displaying a computer screen with a picture of a naked woman; displaying a poster depicting plaintiff as the "President and CEO of the Man Hater's Club of America" together with a statement that plaintiff must also be in control of sex; and asking plaintiff to draft the beliefs of the "He-Men Women Hater's Club." *Duncan,* 300 F.3d at 933-35. The Eighth Circuit held that the supervisor's harassing behavior was not sufficiently severe and pervasive so as to subject the plaintiff to a hostile working environment. *Id.*

Several other Eighth Circuit cases that have rejected hostile work environment claims premised upon facts equally or more egregious than the conduct at issue here include: *McCowen,* where plaintiff was grabbed by the waist, chest, buttocks, and subjected to simulated intercourse by a male co-worker on several occasions, and *Pedroza, supra. See McCowen,* 349 F.3d at 543, and *Pedroza,* 397 F.3d at 1069. The Eighth Circuit decisions in the preceding cases illustrate the demanding standards in

making a prima facie hostile environment sexual harassment case. In light of these cases, the court determines that Miller has failed to meet the fourth element of his claim or that the harassment affected a term, condition, or privilege of his employment.

Furthermore, Miller's claim still fails as a matter of law because he has failed to demonstrate that his employer knew or should have known of the harassment and failed to take proper remedial action, thus, failing to prove the fifth element of his prima facie case. In this case, the evidence shows that, once Miller reported the alleged incident with Ellis, Kellogg immediately conducted a full investigation of the situation. Kellogg's investigation consisted, among other things, of interviews with Miller, Ellis, and Haynes. Although Kellogg deemed its investigation inconclusive, Kellogg counseled Ellis regarding its policy against harassment and warned that if additional evidence came to light, the investigation would be reopened. *See* McCaffrey Dep. at 60:22- 62:18; 102:15- 103:13; Dailey Dep. at 48:2- 49:1; Muth Dep. at 78:1-8. In addition, Kellogg also warned the other contractors that harassment would not be tolerated by Kellogg. *Id.* Miller alleges that Kellogg failed to take proper action with respect to the graffiti, but he never reported the graffiti or name calling to management until the time of his termination hearing. Miller Dep. at 109:8-16;112:1- 130:24; 133;17-25; 135:1- 137:19. Furthermore, there is no evidence that Miller was the author of the graffiti or notes. Here, nothing in the record suggests that Kellogg failed to take prompt remedial action regarding Miller's complaints, thus, Miller fails to meet the fifth element of his prima facie case.

However, even if the court were to determine that Miller meets each element of his prima facie case, his claim still fails as a matter of law because he cannot show that Kellogg's reason for his termination is a pretext. As previously stated, in an employment

discrimination case, once the plaintiff presents a prima facie case, the employer must articulate a legitimate non-discriminatory reason for the adverse employment action. Here, Kellogg indicates that it terminated Miller because he slept on the job in a concealed manner. Kellogg asserts that, under its work policy, an employee is subject to termination if he or she is caught sleeping in a concealed manner. Kellogg indicates that it terminated Miller from his employment for this reason. Miller Dep. at 84:9-15; McCaffrey Dep. at 70:3-72:2; Dailey Dep. at 62:9- 63:20; Muth Dep. at 80:17- 83:25. The court determines that Kellogg has met its burden to advance a legitimate business reason for terminating Miller. Thus, the burden now shifts back to Miller to show that Kellogg's reason is merely a pretext for retaliation or unworthy of belief. Here, Miller has not offered a single reason supported by appropriate evidence that shows that Kellogg's decision to terminate him for sleeping in a concealed manner was based on discriminatory reasons.

Based on the foregoing, the court concludes that plaintiff's claim for hostile work environment fails as a matter of law. Consequently, the defendant's motion for summary judgment, with respect to this claim, should be granted.

*Retaliatory Discharge*

Title VII provides that it shall be an unlawful employment practice for any employer to retaliate against an employee or an applicant for employment "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (1994). To establish a prima facie claim of retaliation, the plaintiff has to show that: (1) he filed a charge of harassment or engaged in other protected activity; (2) his employer subsequently

took an adverse employment action against him; and (3) the adverse action was casually linked to his protected activity.  *See Cross v. Cleaver,* 142 F.3d 1059, 1071-72 (8th Cir. 1998).  If the plaintiff makes this showing, the employer must then rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  If the employer does this, the burden of production shifts back to the plaintiff to demonstrate that the employer's non-discriminatory reason is pretextual.  *Id.*

Here, there is no question that Miller meets the first element.  He complained to Kellogg management about the alleged incident with Ellis.  Also, there is no dispute that Miller was terminated approximately seven weeks after making his complaint.  Furthermore, the timing of Miller's complaint of the alleged incident with Ellis and his termination creates an inference of connection. *Smith v. Allen Health Sys., Inc.,* 302 F.3d 827, 833 (8th Cir. 2002) (In determining a connection between the first and second element of retaliation "the length of time between protected activity and adverse action is important.").  Therefore, the burden of production now shifts to Kellogg to advance a legitimate reason for Miller's termination.

In this case, Kellogg indicates that it terminated Miller because he slept on the job in a concealed manner.  Kellogg asserts that, under its work policy, an employee is subject to termination if he or she is caught sleeping in a concealed manner.  Kellogg states that, on November 14, 2002, Miller was found sleeping on a chair, supported by two cushions, six feet inside an enclosed air handler unit located above the employee lunch room.  Miller Dep. at 84:9-15; McCaffrey Dep. at 70:3- 72:2; Dailey Dep. at 62:9- 63:20; Muth Dep. at 80:17- 83:25.  Kellogg indicates that it terminated Miller from his employment for this reason.  *Id.*  The court determines that Kellogg has met its burden to advance a legitimate

business reason for terminating Miller. Thus, the burden now shifts back to Miller to show that Kellogg's reason is merely a pretext for retaliation or unworthy of belief.

Here, Miller states that other employees who had committed the same offense (sleeping in a concealed manner) had not been terminated and had been given a lesser suspension of time than the one he received. He contends this illustrates that he had been treated differently from other employees similarly situated and that Kellogg's reason for terminating him is just a pretext. The record, however, indicates that Kellogg treated Miller the same, if not better, as other employees who, like himself, slept during work hours in a concealed manner. For example, Miller indicates that Kellogg treated co-worker Employee #405544 and another Kellogg employee identified only as #405845 differently than him after it found them sleeping on the job in a concealed manner. However, the record indicates that Kellogg gave these two employees, like Miller, an opportunity to go back to work under a "Last Chance Agreement." Haynes Dep. at 63-68; Muth Dep. at 74-75; see also Filing No. 55, Ex. N-32; Filing No. 64, Ex. K. Miller contends that Kellogg suspended these two employees for approximately one month and that he received a longer suspension (approximately two months). Miller asserts this indicates that Kellogg treats employees differently if they complained about sexual harassment. However, the record indicates that Kellogg terminated other employees, who had not complained of sexual harassment and had committed the same offense, without giving them the benefit of a "Last Chance Agreement" to return to work. For example, the record indicates that Kellogg terminated at least two employees, Employee #405825 and Employee #410164, for sleeping on the job in a concealed manner without giving or offering them an opportunity to return to work. *See* Muth Dep. at 74-75; Haynes Dep. at 63-68.

Miller also indicates that Employee #405837, Employee #415133, and Employee #410270 slept on the job, but that Kellogg did not terminate them for this offense. However, the record does not indicate, and Kellogg did not determine, that these employees committed the same offense (sleeping in a concealed manner). *See* Filing No. 55, Ex. N-32 and Muth Dep. at 67:2- 68:13; Filing No. 64, Ex. L, M and N. Consequently, Miller was not similarly situated to these employees.

Here, Miller has failed to meet his burden of showing that Kellogg's reason for terminating him was a pretext. Consequently, Kellogg's motion for summary judgment, with respect to Miller's claim of retaliation, should be granted.[3]

Based on the foregoing, the court determines that Miller's claims of hostile work environment and retaliatory discharge fail as a matter of law.

IT IS, THEREFORE, ORDERED that the defendant's motion for summary judgment (Filing No. 54) is granted. A separate judgment will be entered in conjunction with this Memorandum and Order.

DATED this 11th day of May, 2006.

BY THE COURT:

**s/ Joseph F. Bataillon**
United States District Judge

---

[3] Kellogg also contends that Miller's "Last Chance Agreement" is an enforceable document, which operates as a waiver of his claim for retaliatory discharge. Because the court has determined that Miller has failed to show that his termination was a pretext, the court does not need to resolve that issue.